**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 26-39-DLB-EBA**

**KRIS BALDRIDGE** **PLAINTIFF**

**v.** **MEMORANDUM OPINION AND ORDER**

**JEFF VANCE** **DEFENDANT**

* * * * * * * * * * * * * * * *

## I. INTRODUCTION

"[S]tate officials," like everyone else, "have private lives." *Mackey v. Rising*, 106 F.4th 552, 558 (6th Cir. 2024). This case asks whether Defendant Jeff Vance, a school-board member, acted under color of state law when he sought an Interpersonal Protective Order against Plaintiff Kris Baldridge, a vocal Board critic. Although their dispute touched on Vance's public role, the First Amended Complaint does not plausibly allege that Vance pursued the protective order through any actual or apparent authority of his office. Baldridge's § 1983 claims therefore fail, and the Court declines to exercise supplemental jurisdiction over his remaining state law claims. Accordingly, Vance's Motion to Dismiss (Doc. # 7) will be **granted**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Jeff Vance is an elected member of the Raceland-Worthington Board of Education (the "Board"). (Doc. # 5 ¶ 4). Beginning around October 2023, Plaintiff Kris Baldridge regularly attended Board meetings, where he criticized the school district's governance, finances, and personnel decisions. (*Id.* ¶¶ 3, 5-6). Some of that criticism

targeted Vance specifically, including his "alleged prioritization of personal interests over community needs" and his "motion to reschedule meetings to 4:00 p.m." (*Id.* ¶¶ 6-7).

Baldridge's criticisms, however, soon extended beyond Board meetings and spilled onto social media platforms. (*Id.* ¶ 7). These posts, similarly, addressed the school district's governance and finances. (*See id.*). But some posts used provocative language. Examples include:

- "war is coming";
- "#keeppoundinghiswife"; and
- "Imma hit them harder than Jeff allegedly hits women."[1]

(*Id.*). Each of these posts, Baldridge maintains, were "satirical" and "[h]yperbolic"—"not a direct threat against any individual." (*Id.*).

What followed, Baldridge alleges, was a broader pattern of retaliation by the Board and its members. He first points to a March 2024 incident involving school district employee Cathy Porter. (*Id.* ¶ 10). According to the First Amended Complaint, Porter called the Worthington Police Department from the Board's offices, identified herself as "calling from the Raceland school board," and asked an officer to determine whether Baldridge lived at a particular address. (*Id.* (internal quotations omitted)). The officer then visited the residence, contacted Baldridge's brother, and reported back to Porter. (*Id.*) Though Baldridge notified the Superintendent of this allegedly "retaliatory and intimidating" act, no remedial action was taken. (*Id.* ¶¶ 12-13).

[1] In Baldridge's view, this was a "rhetorical critique of Defendant Vance's alleged behavior[.]" (Doc. # 5 ¶ 7).

But that incident, as Baldridge tells it, was only the beginning. The heart of his individual claim against Vance lies in what happened next: Vance sought a protective order against him.

On February 26, 2025, Vance filed a Petition for an Interpersonal Protective Order against Baldridge in Greenup Family Court. (Doc. # 5 ¶ 17). In the Petition, Vance alleged that Baldridge had become aggressive and "unpredictable" during Board meetings, had been escorted from a meeting, and later posted a threat of physical harm. (*Id.* ¶ 18). He stated: "I truly fear for the safety of myself and my fellow Board Members." (*Id.*).

The family court entered a temporary order that same day. (*Id.* ¶ 24). Among other things, the order prohibited Vance from coming within 500 feet of Vance or attending Board meetings where Vance was present. (*Id.*). The order remained in effect until April 16, 2025. (*Id.*).

After the Petition was initially dismissed for Vance's failure to appear and later reinstated, Vance filed a verified Supplemental Petition on May 12, 2025. (*Id.* ¶ 20). The Supplemental Petition identified additional social-media posts and conduct at Board meetings that Vance considered threatening. (*Id.* ¶ 21). It also alleged that Baldridge's targeting of Vance, his family, his fellow Board members, and others made Vance fear that Baldridge would commit an act of violence. (*Id.*).

The family court held an evidentiary hearing on May 14, 2025. (*Id.* ¶ 24). There, Vance testified that the safety of his wife and two daughters was his "primary concern" and that this concern prompted him to seek an Interpersonal Protective Order. (Doc. # 5-5 at 68). The presiding judge stated the same. (*See id.* at 80 (noting that Vance had

"repeatedly stated on direct and cross that his motive [for filing] was fear for himself, his children, and his wife")).

Ultimately, however, the court dismissed the Petition. It explained that Vance appeared "not . . . as [a] Board Member but [as] his own personal self[,] requesting an [Interpersonal Protective Order]," while the conduct at issue was mostly "geared toward the School Board." (*See id.* at 85). At the same time, the court warned Baldridge: "be careful to make sure that Mr. Vance nor his family has any reason to fear any threat from you[.]" (*Id.* at 86). A formal dismissal followed on May 22, 2025. (Doc. # 5 ¶ 24).

Baldridge then turned to federal court, seeking to challenge Vance's decision to pursue the protective order. (*See* Doc. # 1). After Vance moved to dismiss the original Complaint (Doc. # 4), Baldridge filed the First Amended Complaint (Doc. # 5).[2] It asserts First Amendment retaliation claims under 42 U.S.C. § 1983 against Vance in his individual and official capacities, along with Kentucky-law claims for malicious prosecution and abuse of process. (Doc. # 5 ¶¶ 29-44). Vance again moved to dismiss (Doc. # 7), and the matter is now fully briefed. (Docs. # 8 and 9).

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must include factual allegations that, if accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in turn, requires a "reasonable inference that the

---

[2] Because Baldridge's filing of the First Amended Complaint supersedes the original Complaint, Vance's original motion to dismiss is rendered moot. *See Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) ("The general rule is that filing an amended complaint moots pending motions to dismiss.").

defendant is liable for the misconduct alleged." *Id.* "[F]acts that are 'merely consistent with' a defendant's liability" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). And while the "allegations in the complaint are accepted as true," *id.* at 639-40, where an exhibit "contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations," *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (internal quotations omitted).

## IV. DISCUSSION

Vance moves to dismiss each of Baldridge's claims. First, Vance argues that Baldridge's individual-capacity claim under § 1983 fails because Vance did not act under the "color of state law." (Doc. # 7-1 at 2). Second, Vance argues that Baldridge's official-capacity claim fails because the First Amended Complaint does not plausibly allege a basis for imposing liability on the Board. (*Id.* at 7). Finally, Vance argues that Baldridge has not plausibly alleged malicious prosecution or abuse of process under Kentucky law. (*Id.* at 8-9). The Court addresses each argument in turn.

### A. Individual-Capacity Claim

To state a viable claim under § 1983, a plaintiff must allege: "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*,

753 F.3d 606, 614 (6th Cir. 2014). Vance contests only the second element. (*See* Doc. # 7-1 at 2).

But first, the Court must pinpoint the conduct underlying Baldridge's individual-capacity claim. That claim does not challenge any action taken by the Board, such as a vote, policy, directive, or other exercise of governmental power. Rather, Baldridge challenges Vance's decision to "invoke[] the coercive machinery of a Kentucky court of record" and initiate a protective order proceeding. (*See* Doc. # 5 ¶ 34). That decision, Baldridge argues, sought to "restrain [Baldridge] from attending the public meetings of the very governmental body on which [Vance] serves." (*Id.*). The relevant question, then, is whether Baldridge has alleged sufficient facts to support a plausible inference that Vance acted under the color of state law when he sought the protective order. He has not done so.

***1. State-Action Framework***

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). But not every act of a public official satisfies that definition. "[S]tate officials," like everyone else, "have private lives." *Mackey*, 106 F.4th at 558. And the "acts of state officials 'in the ambit of their personal pursuits' do not constitute state action." *Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (6th Cir. 2001) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). Rather, the "key determinant is whether the actor

intends to act in an official capacity or to exercise official responsibilities pursuant to state law." *Id.*

Most of the time, "state action is easy to spot." *Lindke v. Freed*, 601 U.S. 187, 195 (2024). Harder cases, though, generally present one of two problems. "The first arises from the States' traditional practices of hiring ostensibly private parties . . . to perform public services." *Mackey*, 106 F.4th at 558. For that, the "Supreme Court has adopted various tests (a public-function test, a state-compulsion test, and a nexus test)[.]" *Id.*

The second—hinted at above—arises when a public official engages in conduct that may be either "official" or "personal." *See id.* at 558-59. In such circumstances, conduct typically constitutes state action only if it "(1) occurs 'in the course of performing an actual or apparent duty of his office,' or (2) . . . 'is such that the actor could not have behaved as he did without the authority of his office.'" *Blackwell v. Allen*, No. 22-1300, 2022 WL 17832191, at *7 (6th Cir. Dec. 21, 2022) (quoting *Waters*, 242 F.3d at 359). The Sixth Circuit has referred to this as the "state-official test." *Id.*

As a member of the Board, Vance—by all indicators—was a public official. *See also James v. Wilson*, 95 S.W.3d 875, 903 (Ky. Ct. App. 2002) (observing that "local school boards are agencies of state government"). Neither party disputes this. (*See, e.g.*, Doc. # 8 at 8 ("Vance is not a private actor. He is a sitting member of the Raceland-Worthington Board of Education.")). The analysis, therefore, turns on the second problem (the "state-official test"): whether Vance acted in his official or personal capacity when he sought the protective order.

***2. Analysis***

Vance argues that he sought the protective order as a private citizen, not by exercising the authority of his Board office. (*See* Doc. # 7-1 at 2). The Court agrees.

**i. The Complaint does not plausibly allege that Vance acted in the course of an actual or apparent official duty.**

Start with the first element of the "state-official test." Despite repeatedly invoking the phrase acting "under color of state law," the First Amended Complaint paints a picture of a public official acting on behalf of his private pursuits.

True, in some circumstances, seeking a protective order *could* constitute state action. *See, e.g.*, *Blackwell v. Chisholm*, No. 2:23-CV-13015, 2024 WL 4482518, at *10 (E.D. Mich. Aug. 16, 2024). In *Chisholm*, a city attorney sought an ex parte personal protection order ("PPO") against a man for harassment and stalking following the man's disruptive behavior at city council meetings. *See id.* Although the city attorney petitioned for the order as an individual, the court ultimately held that the man plausibly alleged state action because the "PPO petition and litigation was supported by [the City of] Inkster in that [the city attorney] prepared the PPO as part of his work for the city and was compensated thusly." *Id.* at *11.

No comparable facts, however, are alleged here. Baldridge does not allege that the Board directed Vance to seek the protective order, assisted in preparing or litigating the Petition, or compensated him for doing so. And he does not identify any state law, ordinance, or regulation that compelled Vance's action. The closest Baldrige comes to identifying any official basis for Vance's conduct is his allegation that the Board seemingly ratified a policy of suppressing critics after district employee Cathy Porter asked police, on or about March 26, 2024, to look into Baldridge's residence. (Doc. # 5 ¶¶ 10-13, 38).

But that one incident occurred almost a year before Vance sought a protective order. And "[i]t is only common sense that one incident of policy deviation, however flagrant, cannot establish custom." *Gailor v. Armstrong*, 187 F. Supp. 2d 729, 734 (W.D. Ky. 2001). Without more, all the First Amended Complaint does is plead facts that are "merely consistent with" Vance's liability, stopping "short of the line between possibility and plausibility of 'entitlement to relief.'" *Twombly*, 550 U.S. at 557 (brackets omitted).[3]

Nor did Vance claim to represent the Board or invoke his status as a Board member in a manner suggesting apparent authority. *See, e.g.*, *Anderson v. Warner*, 451 F.3d 1063, 1068-69 (9th Cir. 2006) (holding that a jail commander acted under color of state law when he assaulted the plaintiff because he prevented bystanders from intervening by claiming that he was a "cop"). Baldridge argues otherwise, emphasizing that Vance "invoked his fellow Board members' safety" and filed the Petition in "response to speech directed at Vance in his role as a Board member." (Doc. # 8 at 4-5). To the extent Baldridge relies on those allegations to establish apparent authority, however, they fall short. "Government employees who have private legal disputes with citizens, *even if in some sense growing out of their government activities*, may defend themselves just as any citizen might." *Meadows v. Enyeart*, 627 F. App'x 496, 507 (6th Cir. 2015) (emphasis added). Vance's references to his Board membership may show that the dispute arose

[3] Although the First Amended Complaint devotes most of its attention to the "Porter incident" (Doc. # 5 ¶ 12), it also alleges—in two different spots—that "Board members and their associates contact[ed] employers and others in the community in response to citizens' protected speech." (Doc. # 5 ¶¶ 14, 38). But it identifies neither the citizens nor the employers allegedly contacted, much less any causal connection between those contacts and Vance's Petition. "The policy or custom must play a part in the violation of federal law—a causal connection is required." *Young v. Hicks*, No. 5:19-CV-200-TBR, 2021 WL 3872061, at *10 (W.D. Ky. Aug. 30, 2021). Absent that connection and basic supporting detail, Baldridge's allegation suggests, at most, "the mere possibility of misconduct," which is insufficient. *See Est. of Smith ex rel. Richardson v. United States*, 509 F. App'x 436, 439 (6th Cir. 2012).

from his public role, but they do not show that he invoked the authority of that role when seeking relief. Indeed, the hearing transcript reinforces that conclusion. The presiding judge observed that Vance had "repeatedly stated on direct and cross that his motive [for filing the Petition] was the fear for himself, his children, and his wife." (Doc. # 5-5 at 80). That controls over any contrary characterization in the First Amended Complaint. *See Williams*, 498 F. App'x at 536 (noting that, where an exhibit "contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations").

At most, then, the First Amended Complaint supports the inference that Vance pursued a personal interest in seeking the protective order—not that he invoked actual or apparent authority to do so. The first part of the state-official test is therefore not satisfied.

**ii. The Complaint does not plausibly allege that Vance needed the authority of his office to seek the protective order.**

The Court now turns to the second part of the state-official test. The First Amended Complaint does not plausibly allege that Vance could not have sought the protective order without the authority of his Board office.

For starters, filing the Petition was not an act "made possible only because [Vance] [was] clothed with the authority of state law." *West*, 487 U.S. at 49 (quoting *Classic*, 313 U.S. at 326). Vance sought a remedy available to any person under Kentucky law. *See, e.g.*, *Redding v. St. Eward*, 241 F.3d 530, 531-33 (6th Cir. 2001) (concluding that a police officer's 911 calls and reports to responding officers were "functionally equivalent to that of any private citizen calling for police assistance" and, therefore, not state action) (internal quotation marks omitted). And doing so required no "special government equipment, resources, or access[.]" *Blackwell*, 2022 WL 17832191, at *8. Put simply,

Vance could have sought the same relief without serving on the Board, which forecloses a finding of state action.

Baldridge argues the opposite—that is, Vance could not have filed *this* Petition absent his position on the Board "because the very speech [Vance] sought to suppress was speech *about him as a board member, about his role on the Board, about how he and his fellow members govern the District*[.]" (Doc. # 8 at 4-5 (emphasis in original)). But again, a public official's legal dispute does not become state action merely because it "in some sense grow[s] out of [his] government activities." *Meadows*, 627 F. App'x at 507. For example, "[i]f a regulator thinks that his landlord is squeezing him to pay rent because of a political disagreement, the regulator can bring an action in landlord-tenant court[.]" *Id.* "Such action is not undertaken under the color of state law." *Id.*

The same applies here: although Vance's dispute with Baldridge concerned his public role, Vance needed no authority from that role to seek a protective order. He could invoke that private remedy just as any other citizen could. And because the First Amended Complaint does not plausibly allege that Vance's Board position enabled him to seek the protective order—or that he otherwise used or abused state power—the second part of the state-official test is not satisfied.

Therefore, with neither part of the state-official test satisfied, Baldridge has not plausibly alleged action under color of state law, and his individual-capacity claim must be dismissed.

**iii. Baldridge's remaining counterarguments are unavailing.**

Most of Baldridge's counterarguments have been addressed above. The Court addresses the remaining arguments in turn.

First, at the threshold, Baldridge attempts to distinguish *Waters*—the case setting out the governing standard for determining state action—because it was decided at summary judgment. (*See* Doc. # 8 at 9). That procedural distinction is immaterial. The existence of state action, ultimately, is a question of law. *See, e.g.*, *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002) ("Whether [a defendant] was acting under color of law is a legal issue."). And courts thus routinely dismiss § 1983 claims that, like Baldridge's, fail to plausibly allege state action. *See, e.g.*, *Taylor v. Hooven*, No. 1:24-CV-204, 2025 WL 27378, at *8 (S.D. Ohio Jan. 3, 2025) ("The Court will dismiss the § 1983 claims against Officer Hooven because Plaintiffs did not plead sufficient facts to establish that Officer Hooven was acting under the color of state law."); *Perez v. Hyman*, No. 6:22-CV-230-REW-HAI, 2023 WL 11892924, at *2 (E.D. Ky. Aug. 15, 2023) ("Here, Perez cannot maintain a § 1983 claim against Jones or Hyman because the Complaint does not allege . . . that either defendant acted under color of law."); *Testerman v. Swafford*, No. 1:07-CV-104, 2008 WL 794143, at *3 (E.D. Tenn. Mar. 24, 2008) ("Accordingly, Plaintiff's § 1983 individual capacity claim against Defendant Swafford fails as pled, as it does not establish that Defendant Swafford acted under color of law.").

Second, Baldridge cites *Barrett v. Harrington*, 130 F.3d 246 (6th Cir. 1997) and *Rudd v. City of Norton Shores, Michigan*, 977 F.3d 503 (6th Cir. 2020), but neither case helps him. (*See* Doc. # 6 at 11-12; Doc. # 8 at 7-8). *Barrett*, as Vance rightly acknowledges, concerned judicial immunity—not whether the defendant acted under color of state law—and expressly left that question unresolved. *See* 130 F.3d at 264 n.31. That matters. Judicial immunity only protects "judges and other court officers . . . from suit on claims arising out of the performance of judicial or quasi-judicial functions." *Foster*

*v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988). And Baldridge does not (nor could he) allege that Vance was a judge or other court officer. *Rudd*, meanwhile, addressed how an otherwise private defendant may satisfy § 1983's color-of-law requirement by conspiring with a public actor. *See* 977 F.3d at 512. But Baldridge does not allege that Vance was a private actor whose conduct became attributable to the State through a conspiracy. Quite the opposite: he insists that Vance "is *not* a private actor[.]" (Doc. # 8 at 8 (emphasis added)). The relevant question, then, is whether "a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or . . . the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters*, 242 F.3d at 359. *Rudd*, therefore, is inapplicable.

Finally, Baldridge argues that the family court's decision denying the petition did not "adjudicate[] the federal color-of-law question[.]" (*See* Doc. # 8 at 6). True enough, but beside the point. The Court does not treat the family court's ruling as conclusive of a "federal color-of-law question." Rather, the hearing transcript confirms Vance's motivation for filing. (*See* Doc. #5-5 at 80 (observing that Vance had "repeatedly stated on direct and cross that his motive [for filing the Petition] was the fear for himself, his children, and his wife")). That motivation, in turn, bears on "whether [Vance] intend[ed] to act in an official capacity or to exercise official responsibilities pursuant to state law." *Waters*, 242 F.3d at 359. *See also Van Ort v. Est. of Stanewich*, 92 F.3d 831, 839 (9th Cir. 1996) (concluding that a police officer did not act under color of state law during an attempted robbery because at no point did the defendant "purport to be acting as a policeman"). So, yes, although the family court's ruling does not itself resolve the "federal color-of-law question," the transcript contradicts any allegation that Vance purported to act on the

Board's behalf. That forecloses a plausible inference of state action. *See, e.g., Williams*, 498 F. App'x at 536 (explaining that an attached exhibit controls when it contradicts the complaint's allegations).

**B. Official-Capacity Claim**

Having concluded that the First Amended Complaint does not plausibly allege state action, the official-capacity claim is easily resolved.

An official-capacity claim "is not a suit against the official but rather a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Baldridge's official-capacity claim against Vance is, in substance, a claim against the Board. *See, e.g.*, *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ("An official-capacity claim against a person is essentially a claim against the municipality.").

The Board, however, "cannot be liable for the constitutional torts of its employees; that is, it cannot be liable on a *respondeat superior* theory." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007). Rather, Baldridge must allege that the Board engaged in a "policy or custom" that was the "moving force" behind the alleged deprivation of his rights. *Id.* (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)).

But as discussed above, the First Amended Complaint fails to plausibly allege that Vance sought the protective order while acting under color of state law. "In turn, it fails to plausibly allege that [Vance] acted in *any* official capacity, much less in the capacity of an official with final decision-making authority." *Blackwell*, 2022 WL 17832191, at *9 (emphasis in original). Therefore, because the First Amended Complaint fails to allege state action, it likewise fails to connect any constitutional deprivation to a Board policy or

custom. Baldridge's official-capacity claim must be dismissed. *See also Morris v. City of Detroit, Michigan*, 789 F. App'x 516, 519 (6th Cir. 2019) ("[A]s discussed above, Adams was not acting under color of law. Consequently, the City cannot be liable for Adams' personal actions not taken under color of state law, and plaintiffs' claims against the City fail.").

**C. State Law Claims**

Baldridge also asserts common law tort claims for malicious prosecution and abuse of process under the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Having disposed of Baldridge's § 1983 claim—the only basis for subject-matter jurisdiction—the Court declines to exercise supplemental jurisdiction over his remaining state-law claims.

The Court has "broad discretion in deciding whether to exercise supplemental jurisdiction" after it has dismissed all claims over which it has original jurisdiction. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (internal quotations omitted). And when all federal claims are dismissed before trial, "there is a strong presumption in favor of dismissing supplemental claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). Only "unusual circumstances"—such as "dismissal on the eve of trial" or where the parties and the court have spent years litigating the case—overcome that presumption. *Id.*

No "unusual circumstances" exist here. "The Court has dismissed the sole federal claim at the earliest possible stage of the proceedings, has held no hearings, and has based its ruling purely on written motions." *Farmer v. Gonzalez*, No. CV 5:21-49-KKC, 2022 WL 4591637, at *7 (E.D. Ky. Sept. 29, 2022). Those considerations favor dismissal.

So does comity: "Kentucky state courts are more familiar and, therefore, better able to resolve" the remaining state law claims. *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 815 (6th Cir. 2004). The Court therefore declines to exercise supplemental jurisdiction and dismisses Baldridge's state-law claims without prejudice.

## V. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss (Doc. # 4) is **DENIED** as moot;

(2) Defendant's Motion to Dismiss (Doc. # 7) is **GRANTED**;

(3) Plaintiff's claims under 42 U.S.C. § 1983 (Counts I and II) are **DISMISSED WITH PREJUDICE**;

(4) Plaintiff's state law claims (Counts III and IV) are **DISMISSED WITHOUT PREJUDICE;**

(5) This matter is **DISMISSED AND STRICKEN** from the Court's active docket; and

(6) An accompanying **JUDGMENT** in favor of Defendant shall be filed contemporaneously herewith.

This 16th day of October, 2026.

**Signed By:**
***David L. Bunning*** DB
**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Ashland Civil\2026\26-39 MOO re MTD.docx